**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **EUGENIA SPIVEY**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action File** |
| | ) | **No.** |
| **HEALTHCARE STAFFING, INC., AND** | ) | |
| **MIDDLE FLINT AREA COMMUNITY** | ) | |
| **SERVICE BOARD d/b/a MIDDLE** | ) | |
| **FLINT BEHAVIORAL HEALTHCARE,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Eugenia Spivey asserts her Complaint against Defendants Healthcare Staffing, Inc. ("HCS") and Middle Flint Area Community Service Board d/b/a Middle Flint Behavioral Healthcare ("Middle Flint") and shows the Court as follows:

## NATURE OF ACTION

1.

Plaintiff asserts claims of disability discrimination under Title I of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq. ("the ADA") against Defendants for (1) compensatory damages for lost pay, vacation, retirement benefits, and healthcare benefits, (2) interest on her compensatory damages calculated at the prevailing rate, (3) compensatory damages for mental and emotional distress, pain and suffering and for expenses incurred because of Defendants' violations of law, (4) punitive damages, and (5) her costs of litigation, including her reasonable attorneys' fees. Plaintiff also seeks equitable relief, including reinstatement or front pay in lieu of reinstatement.

2.

Plaintiff also brings this action under the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("the FMLA") against Defendants to recover (1) compensatory damages for lost pay, vacation, retirement benefits, and healthcare benefits, (2) interest on her compensatory damages calculated at the prevailing rate, (3) liquidated damages, and (4) her costs of litigation, including her reasonable attorneys' fees. Plaintiff also seeks equitable relief, including reinstatement or front pay in lieu of reinstatement.

3.

Plaintiff also brings this action for retaliation, in violation of the Equal Pay Act 29 USC § 206 and gender discrimination under Title VII, 42 USC § 2000e et seq. for objecting to being offered an employment position at a substantially lower pay than a man and refusing to accept the position that was offered to her and to recover (1) compensatory damages for lost pay, vacation, retirement benefits, and healthcare benefits, (2) interest on her compensatory damages calculated at the prevailing rate, (3) liquidated damages, and (4) her costs of litigation, including her reasonable attorneys' fees. Plaintiff also seeks equitable relief, including reinstatement or front pay in lieu of reinstatement and liquidated damages.

4.

Plaintiff also brings this action for violations of the overtime provisions of the Fair Labor Standards Act, 29 USC  §201, et seq. to recover (1) compensatory damages for lost pay, vacation, retirement benefits, and healthcare benefits, (2) interest on her compensatory damages calculated at the prevailing rate, (3) liquidated damages, and (4) her costs of litigation, including

her reasonable attorneys' fees. Plaintiff also seeks equitable relief, including reinstatement or front pay in lieu of reinstatement.

## JURISDICTION AND VENUE

5.

This Court has subject matter jurisdiction over the present action under 28 U. S.C. § 1331 because this case arises under the FMLA and the ADA, and the FLSA, federal statutes that affect interstate commerce. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a) (4), and 28 U.S.C. §§ 2201 and 2202.

6.

The venue properly lays in the Northern District of Georgia under 28 U.S.C. §1391 because Defendant HCS is located in this judicial district.

## ADMINISTRATIVE PROCEEDINGS

7.

All conditions precedent to this lawsuit within the meaning of Fed. R. Civ. P. 9(c) have been performed or otherwise occurred.

8.

Plaintiff filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission (EEOC) within one hundred and eighty (180) days of the occurrence of the acts of which Plaintiff complained.

9.

The EEOC sent Plaintiff a Notice of Right to Sue dated July 15, 2021, with respect to Plaintiff's EEOC charge against HCS.

10.

The EEOC sent Plaintiff a Notice of Right to Sue dated July 27, 2021, with respect to Plaintiff's EEOC charge against Middle Flint.

## THE DEFENDANTS OPERATED AS JOINT EMPLOYERS

11.

Defendant Middle Flint is a Georgia community service board created and operating pursuant to OCGA §37-2-6 et seq. and provides behavioral health care and other related services to the Middle Flint area.

12.

Defendant HCS is a corporation that has experience in providing staffing and other related services to community service boards throughout Georgia.

13.

Middle Flint has engaged HCS to provide staff to assist it in providing behavioral health and other related services pursuant to a written contract. Under the terms of the contract, all people designated by HCS to work at Middle Flint are employees of HCS and are not employees of Middle Flint.

14.

Upon information and belief, HCS agrees to indemnify and hold Middle Flint harmless from any and all claims, demands, losses, liabilities, actions, lawsuits, and other proceedings arising out of any alleged wrongful conduct or violations of any state or federal law by HCS or employees engaged by HCS to perform services for Middle Flint pursuant to the contract. Upon information and belief, substantially all of the work done by Middle Flint is conducted by HCS employees.

15.

Under the terms of the contract, Middle Flint has the right to make employment decisions regarding HCS employees, meaning it is an "employer" as defined by the FLSA, FMLA, ADA, and Title VII. HCS and Middle Flint are "joint employers" as that term is defined by federal law.

**STATEMENT OF FACTS**

16.

Eugenia Spivey, a woman, is a lifelong citizen of the State of Georgia who was hired by HCS as a Family Support Coordinator on or about November 20, 2017. Ms. Spivey was assigned by HCS to work at Middle Flint.

17.

As a Family Support Coordinator, Ms. Spivey would meet people who were potential clients of Middle Flint, talk to them about the services provided by Middle Flint, meet with vendors to initiate client treatment, discuss costs, and direct the work of HCS employees and independent contractors who worked for Middle Flint.

18.

HCS employee Mike Ragsdale, the Middle Flint Intellectual Developmental Disabilities Director ("IDDD"), interviewed, hired, and supervised Eugenia Spivey.

19.

In July of 2018, the Defendants promoted Ms. Spivey to Residential Support Services Coordinator. She continued performing the duties of a Family Support Coordinator. As a Residential Support Services Coordinator, Ms. Spivey's job included coordinating the operations of a group home in preparation for State Inspection, including hiring independent contractors and assigning work to other HCS employees.

20.

Ms. Spivey regularly worked between 50 to 55 hours per week.  HCS failed to pay overtime ("OT") premium or pay time and one-half her regular rate of pay as required by the Fair Labor Standards Act. Ms. Spivey was not exempt from the overtime requirements of the FLSA.

21.

In March 2020, as a result of the pandemic, Ms. Spivey's supervisor, Mike Ragsdale, directed Ms. Spivey not to come to the office, but to perform her job duties remotely.  Ms. Spivey was able to perform the essential duties of her job remotely in her home office.

22.

Around the beginning of April 2020, Mike Ragsdale retired from his position as IDD Director. Willie Green, on behalf of Middle Flint and HCS, offered the position of IDD Director to Eugenia Spivey at a lower salary than paid to Mike Ragsdale. Ms. Spivey objected to being offered lower pay for the same job responsibilities that Defendants paid a man.

23.

Eugenia Spivey declined the position of IDD Director because the salary offered to her was substantially less than HCS paid to her predecessor, a man, even though Ms. Spivey had more education than Mr. Ragsdale.

24.

 As a result of Ms. Spivey insisting on equal pay and declining the IDD Director position, Mr. Willie Greene, an HCS employee and higher-level supervisor with Middle Flint who already was busy with his own job duties, also assumed the duties of the IDD Director.

25.

When Willie Greene assumed the duties of the IDD Director, he became Eugenia Spivey's direct supervisor.

26.

.   By April 15, 2020, when Willie Green became Ms. Spivey's supervisor, Eugenia Spivey had returned to the office to do her work.

27.

Ms. Spivey has mental disabilities including PTSD, mixed bipolar disorder, and dissociative personality disorder controlled with medication. By April of 2020, her disabilities had flared up and interfered with her ability to work without reasonable accommodation for her disabilities.

28.

On May 1, 2020, Ms. Spivey notified HCS in writing of a flare-up of her disabilities and requested a reasonable accommodation of being able to work remotely when her mental disabilities become symptomatic. Neither HCS nor Middle Flint engaged in an interactive process with Ms. Spivey to determine a reasonable accommodation to allow her to work with her disabilities.  Her accommodation request was summarily denied or ignored by HCS employees.

29.

Eugenia Spivey's doctor ordered her to be on continuous FMLA leave beginning May 14 with an estimated return to work date of August 1, 2020.

30.

Eugenia Spivey worked for Defendants for more than 1250 hours in the previous 12 months.

31.

Defendants employed more than 50 employees within a 75-mile radius of the facility where Ms. Spivey worked.

32.

Defendants were subject to the FMLA at all times relevant to this action.

33.

Plaintiff Eugenia Spivey was eligible for FMLA protection at all times relevant to this action.

34.

Eugenia Spivey made Defendants aware that she had a serious health condition for which she needed time off of work.

35.

Ms. Spivey began an FMLA-protected leave from work on May 15, 2020.

36.

On May 19, 2020, Ms. Spivey reports to HCS employee Beth Ragan, CEO of Middle Flint, that her supervisor, Willie Green, is bullying her and being abusive to her which is aggravating her disabilities.

37.

On May 27, 2020, Ms. Spivey submits a request for reasonable accommodation to take time off from work when her disabilities flare-up. Her doctor tells Defendants that Ms. Spivey's condition should stabilize by August 2020.

38.

On July 13, 2020, Ms. Spivey requested an accommodation to take additional time off of work until December of 2020 because of the flare-up of her disabilities. Neither HCS nor Middle Flint engaged in an interactive process with Ms. Spivey to determine reasonable accommodations to allow her to work with her disabilities.  Her accommodation request was summarily denied or ignored by HCS employees.

39.

 On July 20, 2020, while Eugenia Spivey was on FMLA leave, an HCS employee working for Middle Flint, notified HCS that Middle Flint has fired Eugenia Spivey and will not permit her to return to any position at Middle Flint following her FMLA leave.

40.

On August 11, 2020, HCS sent a letter to Ms. Spivey notifying her that she is fired from both Middle Flint and HCS and that neither employer will return her to any position following her FMLA leave.

## COUNT ONE

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

41.

Plaintiff incorporates by reference the previous averments of this Complaint.

42.

Plaintiff regularly worked in excess of 40 hours during a workweek without being compensated for one and one-half times her regular rate of pay for work hours exceeding 40.

8

43.

Both defendants meet the definition of "employer" pursuant to the Fair Labor Standards Act.

44.

The contract between Middle Flint and HCS provides that HCS will bill Middle Flint 1.5 times an employee's regular rate of pay for hours an HCS employee works for Middle Flint beyond 40 in a workweek. The contract also provides for tracking employee hours and monitoring and managing overtime hours.

45.

Both defendants knew of the existence and requirements of the Fair Labor Standards Act.

46.

The failure of the Defendants to pay the overtime premium required by the Fair Labor Standards Act was a willful violation of the Act.

47.

Defendants are liable to Plaintiff for unpaid overtime compensation, plus liquidated damages, interest, attorneys fees, and costs pursuant to the Fair Labor Standards Act.

## **COUNT TWO**

## **EQUAL PAY ACT AND TITLE VII RETALIATION**

48.

Plaintiff incorporates by reference the previous averments of this Complaint.

49.

When Defendants offered Plaintiff the position as the IDD Director at a lower pay than Defendants had previously paid a man for the same position, Plaintiff reasonably believed that

9

the offer violated the provisions of the Equal Pay Act and Title VII which require employers to pay men and women the same pay for the same work.

50.

Both the Equal Pay Act and Title VII prohibit retaliation against employees for objecting to violations of the law.

51.

By objecting to the salary of the job offer and declining to accept the position because the pay was lower than what was paid to a man for the same responsibilities, Plaintiff engaged in conduct protected by the Equal Pay Act and by the Title VII prohibition against gender discrimination

52.

Defendants' ignored and denied Plaintiff's request for accommodations under the ADA, harassed Plaintiff, making the symptoms of her disabilities worse, and ultimately terminated Plaintiff's employment in retaliation for her engaging in protected conduct by objecting to being offered less money than a man for the same position and declining to accept the position in violation of the Equal Pay Act and Title VII.

## **COUNT THREE**

## **VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA) DISABILITY DISCRIMINATION AND FAILURE TO REASONABLY ACCOMMODATE**

53.

The averments in the preceding paragraphs of the Complaint are incorporated by reference.

54.

Plaintiff Eugenia Spivey was diagnosed with a flare in her bipolar disorder, anxiety disorder, and PTSD in May 2020.

55.

With the outbreak of Covid-19 and the events that followed at Middle Flint, Eugenia Spivey suffered a mental crisis of her bipolar disorder, anxiety disorder, and PTSD which caused her to be substantially limited in one or more major life activities including mental clarity, inability to cope with stressful situations that arise in the workplace, fear, rage and was determined by her physician that she should not interact in person with clients, managers or co-workers.

56.

Bipolar disorder and anxiety disorders are defined by the ADA as disabilities.

57.

Eugenia Spivey had a history of bipolar disorder and anxiety disorder.

58.

Eugenia Spivey had a record of having this disability.

59.

By or before May 1, 2020, Defendants knew that Eugenia Spivey had been diagnosed with bipolar disorder, anxiety disorder, and PTSD.

60.

By or before July 13, 2020, Defendants knew that as a result of Eugenia Spivey's mental crisis, she was substantially limited in her ability to interact with clients, managers, and co-workers.

61.

By or before May 1, 2020, Eugenia Spivey requested a reasonable accommodation for her disability, including to work remotely from home while on intermittent FMLA leave.

62.

By or before May 15, 2020, Defendants knew that Eugenia Spivey had requested a reasonable accommodation for her disability including FMLA leave.

63.

By or before July 13, 2020, Defendants knew that Eugenia Spivey had requested an extension of her FMLA leave up to December 1, 2020.

64.

Defendants did not interact with Eugenia Spivey related to her requests for accommodation and did not engage in an interactive process with her to determine reasonable accommodations, as required by the Americans with Disabilities Act.

65.

Defendants did not contact Eugenia Spivey related to her requests for accommodations or her FMLA leave, or her FMLA request for extension.

66.

A reasonable accommodation existed that would have allowed Eugenia Spivey to perform the essential functions of her job, on May 1, 2020, and potentially avoided the need for FMLA leave completely.

67.

Defendants could have accommodated Eugenia Spivey with her request to work remotely from home, as she had been performing her position from home under the direction of Mike Ragsdale, and before Willie Greene was appointed as her supervisor.

68.

Defendants could have accommodated Eugenia Spivey by accommodating her request for an extension to her FMLA leave up to December 1, 2020.

69.

Defendants violated the Americans with Disabilities Act when they failed to engage in an interactive process and provide Eugenia Spivey with reasonable accommodation to be able to work with her disability.

70.

Defendants failed and refused to provide Eugenia Spivey with accommodation to work remotely from her home office.

71.

Eugenia Spivey requested that Defendants assist her, allowing her to work remotely in the position for which she was qualified.

72.

On July 20, 2020, while Eugenia Spivey was out on FMLA leave, Defendant Middle Flint terminated Plaintiff's employment.

73.

August 11, 2020, while Eugenia Spivey was out on FMLA leave, Defendant HCS terminated the ADA accommodation process and terminated Eugenia Spivey's employment.

74.

Defendants terminated Eugenia Spivey's employment because of her disability or based on the need to make reasonable accommodations for her disability in violation of the ADA.

75.

Defendant Middle Flint's delay in reasonably accommodating Eugenia Spivey's disability caused her emotional distress, mental anguish, and financial hardship.

76.

Defendant HCS's failure to reasonably accommodate Eugenia Spivey's disability caused her emotional distress, mental anguish, and financial hardship.

77.

Defendant Middle Flint's decision to terminate Plaintiff's employment while she was out on FMLA leave suffering a mental crisis, despite the availability of a reasonable accommodation caused her emotional distress, mental anguish, and financial hardship.

78.

As a direct and proximate result of Defendants' failure to reasonably accommodate Eugenia Spivey and the termination of her employment, Plaintiff Eugenia Spivey has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including health insurance and life insurance benefits.

79.

In addition, Defendants' actions caused Eugenia Spivey to suffer compensatory damages including, emotional distress, mental anguish, and other non-pecuniary losses.

## COUNT FOUR

## INTERFERENCE WITH, RESTRAINT OF, AND DENIAL OF RIGHTS PROVIDED BY THE FAMILY AND MEDICAL LEAVE ACT

80.

The allegations in the preceding paragraphs are incorporated by reference.

81.

Before her termination, Plaintiff informed Defendants that she would need an extension to December 1, 2020, as her return to work date.

82.

Defendants employed Plaintiff for at least 1250 hours during the twelve consecutive months immediately prior to May 2020.

83.

Defendants each employed fifty (50) or more employees within seventy-five (75) miles of the worksite at which they employed Plaintiff each working day during each of at least twenty (20) calendar workweeks in 2020.

84.

At all times relevant hereto, Defendants had been engaged in or had affected interstate commerce.

85.

At all times relevant hereto, as a result of its contract to supply employees to Defendant Middle Flint, Defendant HCS has acted, directly or indirectly, in the interest of Defendant Middle Flint.

15

86.

Plaintiff's bipolar disorder and anxiety disorder was a serious health condition as defined by the FMLA at 29 U.S.C. § 2611 (11).

87.

Defendants knew or were put on notice of facts that should have caused them to know that Plaintiff had a serious health condition as defined by the FMLA.

88.

Plaintiff's condition required her to have the ability to work from home occasionally when the symptoms of her disability flared up. Plaintiff's condition involved continuing treatment by a health care provider.

89.

Because of Plaintiff's serious health condition, she was temporarily unable to perform the functions of her position with Defendants.

90.

Plaintiff provided Defendants with "adequate notice" of her serious health condition within the meaning of the FMLA, 29 U.S.C. § 2612 (e)(2).

91.

Defendants' termination of Plaintiff during her FMLA leave interfered with her right to obtain ongoing medical leave due to her serious health condition.

92.

Defendants' actions were willful in that Defendants knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FMLA.

93.

Defendants did not act in good faith when they terminated Plaintiff.

94.

Defendants did not have reasonable grounds to believe that the termination of Plaintiff was not a violation of 29 U.S.C. § 2615.

95.

As a direct and proximate result of Defendants' illegal conduct, Plaintiff has suffered the loss of employment, loss of income, loss of healthcare benefits, and has incurred significant medical and other expenses.

96.

Plaintiff is entitled to recover from Defendants the wages, salary, and employment benefits she has lost as a result of Defendants' unlawful conduct, and interest thereon, calculated at the prevailing rate.

97.

Plaintiff is entitled to liquidated damages in addition to the compensation alleged above in accordance with the FMLA, 29 U.S.C. §2617(1).

98.

Plaintiff is entitled to reinstatement at her former position of Family Support Coordinator or to an equivalent position in accordance with the rates of pay, rules, and working conditions that applied to her immediately prior to her termination, or in the alternative, to front pay until she can obtain similar employment in Georgia.

99.

Plaintiff is entitled to recover other equitable relief as appropriate to remedy Defendants' unlawful conduct.

100.

Plaintiff is entitled to recover her costs of litigation, including her reasonable attorneys' fees, in accordance with the FMLA, 29 U.S.C. §2617(3).

## COUNT FIVE

## RETALIATION FOR CONDUCT PROTECTED BY THE FAMILY AND MEDICAL LEAVE ACT

101.

The allegations in all previous paragraphs above are incorporated by reference as if fully set out in this paragraph.

102.

Defendants were on notice in May 2020  that Plaintiff would need to have an accommodation related to her bipolar disorder and anxiety disorder flare-up.

103.

Defendants were on notice in May 2020 that Plaintiff would need to miss work related to her medical condition and in connection with the treatment for her serious health condition.

104.

Plaintiff's conduct in notifying Defendants in May 2020 and in July 2020 that she would need to have accommodation for her serious health condition, including treatment likely to take place on or after August 2, 2020, is conduct that is protected by the FMLA.

105.

As of May 2020, Plaintiff had been employed by Defendants for nearly three years.

106.

Plaintiff was entitled to FMLA-protected leave for treatment for a serious health condition.

107.

Defendants terminated Plaintiff on August 11, 2020, in whole or in part because she made them aware of her need for ongoing medical leave to which she would have been entitled under the FMLA.

108.

Defendants did not act in good faith when they terminated Plaintiff.

109.

Defendants did not have reasonable grounds to believe that the termination of Plaintiff was not a violation of 29 U.S.C. § 2615.

110.

Defendants' termination of Plaintiff constitutes retaliation against Plaintiff because of conduct that is protected by the FMLA.

111.

After her termination, Defendants failed and refused to consider her for alternative positions for which she was qualified because of her protected conduct in requesting leave to which she would have been entitled under the FMLA.

112.

Defendants' failure and refusal to consider Plaintiff for alternate positions constitutes

retaliation against Plaintiff because of conduct that is protected by the FMLA.

113.

Defendants' actions were willful in that Defendants knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FMLA.

114.

Defendants did not act in good faith when they failed and refused to consider Plaintiff for hire or an alternate position.

115.

Defendants did not have reasonable grounds to believe that the failure and refusal to consider Plaintiff for hire or an alternate position was not a violation of 29 U.S.C. § 2615.

116.

As a direct and proximate result of Defendants' illegal conduct, Plaintiff has suffered the loss of employment, loss of income, healthcare benefits, and other benefits of employment and has incurred significant medical and other expenses.

117.

Plaintiff is entitled to recover from Defendants the wages, salary, and employment benefits she has lost as a result of Defendants' unlawful conduct, and interest thereon, calculated at the prevailing rate.

118.

Plaintiff is entitled to liquidated damages in addition to the compensation alleged above in accordance with the FMLA, 29 U.S.C. §2617(1).

119.

Plaintiff is entitled to reinstatement at her former position of Family Support Coordinator or to an equivalent position in accordance with the rates of pay, rules, and working conditions that applied to her immediately prior to her termination, or in the alternative, to front pay until she can obtain similar employment in Georgia.

120.

Plaintiff is entitled to recover other equitable relief as appropriate to remedy Defendants' unlawful conduct.

121.

Plaintiff is entitled to recover her costs of litigation, including her reasonable attorneys' fees, in accordance with the FMLA, 29 U.S.C. §2617(3).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Eugine Spivey respectfully prays this court:

1. Grant a permanent injunction enjoining Defendants, its officers, agents,  servants, employees,  attorneys, and all persons in active concert or participation with it,  from maintaining a hostile work environment and engaging in any other employment practices which discriminate against employees based on their disability.

2. Order  Defendants to institute and carry out policies,  practices,  and programs that provide equal employment opportunities for all employees and that eradicate the effects of its past and present unlawful employment practices.

3. Order Defendants to adopt, implement and distribute a formal, written anti-discrimination policy that prohibits discrimination based on disability, including harassment based on

disability, outlines a procedure for employees to make or report complaints of discrimination, and identifies with whom complaints or reports should be filed.

4. Order the Defendants to distribute to each current employee in the State of Georgia a copy of the policy and distribute the policy to all new employees and review it with them within seven days of hire.

5. Post a copy of the policy described above in its facilities where it has employees, in a place where it is visible to all employees.

6. Order Defendants to provide an annual training program regarding the anti-discrimination policy, to all of its owners, managers, supervisors, and employees.

7. Order Defendants to adopt, implement and distribute a formal written anti-retaliation policy that prohibits adverse employment action and protects employees who make or report complaints of discrimination pursuant to the anti-discrimination policy from being subject to adverse employment action related to the report or complaint.

8. Order Defendants to make Plaintiff Eugenia Spivey whole, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief, including reinstatement or front pay, necessary to eradicate the effects of its unlawful employment practices.

9. Order Defendants to make Plaintiff Eugenia Spivey whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

10. Order Defendants to make Plaintiff Eugenia Spivey whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress,

depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

11. Order Defendants to pay Plaintiff Eugenia Spivey punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

12. Order Defendants to pay Plaintiff liquidated damages on those claims providing for such damages.

13. Grant such further relief as the Court deems necessary and proper in the public interest.

14. Award the Plaintiff Eugenia Spivey her costs in this action, including reasonable attorneys fees, expenses, costs of litigation, and prejudgment and post-judgment interest.

15. Award Plaintiff such other relief as this Court deems just and proper.


**JURY TRIAL DEMAND**

The plaintiff requests a jury trial on all questions of fact raised by her Complaint.

Respectfully submitted this 13th day of October 2021.


/s/ Benjamin F. Barrett Jr.
Benjamin F. Barrett Jr.
GA Bar No: 039586

Ben Barrett Law
1050 Crown Pointe Pkwy, Suite 500
Atlanta, GA 30338
Phone: 404-845-7449
ben@benbarrettlaw.com

*Attorney for Plaintiff*